UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| AUDREY KOLLER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2: 10-284-DCR |
| ) | |
| V. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Audrey Koller and Defendant Michael J. Astrue, Commissioner of Social Security. [Record Nos. 9, 12] Koller argues that an administrative law judge ("ALJ") made a number of errors in reaching his conclusion that she is not disabled. She seeks reversal of the ALJ's decision and an award of benefits. However, the Commissioner contends that the ALJ's decision was proper and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Koller.

**I.**

On October 17, 2007, Koller applied for a period of disability and disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act. She alleged disability beginning October 31, 2003. [Tr., pp. 163-70, 171-77] The applications were denied initially and upon reconsideration. [Tr., pp. 100-03, 104-07, 111-

13, 114-16]  Koller, along with her attorney Timothy J. Byland, vocational expert ("VE") William T. Cody, medical expert Walter Hulon, M.D., and witnesses Anita Smith and Fred Koller, appeared before ALJ Christopher J. McNeil on March 23, 2010.  [Tr., p. 27]  In a hearing decision dated June 2, 2010, ALJ McNeil found that Koller was not disabled under sections 216(i) and 223(d) of the Social Security Act and thus was not entitled to a period of disability or disability insurance benefits.  [Tr., p. 21]  The ALJ further found that Koller was not entitled to Supplemental Security Income because she was not disabled under section 1614(a)(3)(A) of the Act.  [*Id.*]

Koller was fifty-four years old at the time of the administrative hearing.  [Tr., p. 37]  She has a high school education and a cosmetology diploma.  [*Id.*]  She has experience working as a timeshare sales representative and a property manager.  [Tr., p. 212]  Her alleged disability stems from epileptic seizures and anxiety problems.  [Tr., p. 204]  After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Koller suffered from the severe impairment of seizure disorder.  [Tr., p. 15]  Notwithstanding this impairment, ALJ McNeil found that Koller retained the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot use ladders, ropes, or scaffolds and she can only occasionally climb ramps and stairs.  She must avoid all exposure to unprotected heights and dangerous machinery."  [Tr., p. 16]  As a result of the ALJ's assessment, Koller was denied a period of disability, disability insurance benefits, and Supplemental Security Income.  [Tr., p. 21]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past

work to determine whether she can do past work. If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir.

2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Koller challenges the ALJ's decision on numerous grounds. The Court will address each argument in turn.

#### A. Qualifications of Medical Expert

Koller first challenges the qualifications of Walter Hulon, M.D., the medical expert who testified at the hearing. [Record No. 9, pp. 2-3] However, her counsel stated at the hearing that he had no objection to Dr. Hulon serving as a medical expert. [Tr., p. 35] The issue, therefore, is waived. *See, e.g.*, *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1222 n.15 (C.D. Calif. 2005) ("If a party fails to object to an expert's qualifications at the hearing, he waives the right to challenge them.").

Koller also asserts that the ALJ violated HALLEX § I-2-5-42 because he did not provide Dr. Hulon with evidence Koller submitted after the hearing, including a statement by her treating physician and a psychological assessment. [Record No. 9, p. 3] Section I-2-5-42 relates to obtaining medical expert opinions through the use of interrogatories. It states, "Written interrogatories are often used [to obtain a medical expert's opinion] when an ALJ receives posthearing evidence . . . . The claimant or representative may ask the ALJ to obtain interrogatories, or the ALJ may decide to use them on his or her own initiative." HALLEX § I-

2-5-42(A). The section does not impose a duty on an ALJ to submit posthearing evidence to experts, via interrogatories or otherwise. Koller's argument on this point is without merit.

### B. Grid Rule 201.14

Koller also contends that because the ALJ found her unable to perform her past relevant work as a timeshare sales representative and property manager — jobs that require light exertion — she is incapable of performing any light work. Therefore, she argues, she should have been found disabled pursuant to Grid Rule 201.14, which applies to individuals closely approaching advanced age (50-54 years) who are limited to sedentary work. [Record No. 9, p. 3] *See* 20 C.F.R. § 404P app. 2, tbl.1, R. 201.14; *see also* 20 C.F.R. § 404.1563(d) (defining "[p]erson closely approaching advanced age"). This argument is without merit.

Whether Koller can perform her past relevant work and whether she can perform other work are two separate inquiries. *See* 20 C.F.R. §§ 404.1520(g) ("If we find that you cannot do your past relevant work . . . , we will consider [your RFC] . . . , together with your . . . age, education, and work experience[] to determine if you can make an adjustment to other work. If you can make an adjustment to other work, we will find you not disabled." (citation omitted)), 416.920(g) (same). ALJ McNeil's determination that Koller can no longer do her previous work did not preclude a finding that she is capable of other work at the same — or even a greater — exertion level. Indeed, the ALJ found that she had no exertional limitations.[1] [Tr., p. 16] Because Koller is not limited to sedentary work, Grid Rule 201.14 is inapplicable.

---

1 Furthermore, as the Commissioner notes, the VE's opinion that a person with Koller's limitations could not perform her past relevant work was primarily based on her "contact limitations," *i.e.*, inability to have more than occasional contact with coworkers, supervisors, and the general public. [Tr., p. 87; *see* Record No. 12, p. 6 n.4]

### C. Vocational Expert Testimony

Next, Koller asserts that ALJ McNeil erred because he did not "address and correct" the testimony of the vocational expert concerning jobs available in the national economy. [Record No. 9, p. 3] According to Koller, the jobs identified by VE Cody were inconsistent with the Dictionary of Occupational Titles (DOT) listings he provided. She points out that the VE identified "cleaner" as a job she could perform, but the DOT listing he gave, 381.687-030, is for a "patch worker." The DOT listings provided by the VE were merely examples of jobs within certain categories, however. [*See* Tr., p. 88 ("*Representative* DOT number for the cleaner is 381.687-030. A *representative* DOT number for the utility worker is 709.687-010." (emphases added))] A patch worker is a type of light cleaner; DOT 381.687-030 defines the job as follows: "Sweeps floors of cotton-bale compressing plant. Gathers loose cotton from floor. Carries or transfers light equipment to various workers, using hand truck."[2] Likewise, a cleaner and polisher is a type of light utility worker, *see* DOT 709.687-010; a cigar hand bander is a type of sedentary hand packer, *see* DOT 920.687-030; and a fabrication finisher is a type of sedentary inspector, *see* DOT 731.687.014. [*See* Tr., p. 88] Thus, ALJ McNeil correctly concluded that the VE's testimony was consistent with the DOT, and no further discussion was necessary. [*See* Tr., p. 21]

### D. Treating Physician Rule

Koller maintains that the ALJ improperly discounted the opinion of her treating physician, Dr. Mark Middendorf. [Record No. 9, pp. 4-5] ALJ McNeil gave "[l]ittle weight"

---

[2] The heading of the DOT section that contains the patch-worker listing is "Porters and Cleaners."

to Dr. Middendorf's assessment, finding that it did not address Koller's condition during the four-year period between her alleged onset date and the date she began treatment with Dr. Middendorf, was "not supported by objective signs or findings," and was "contradicted by objective medical evidence of record" that Dr. Middendorf had not considered. [Tr., p. 19]

A treating source's medical opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs."). Moreover, the regulations provide that a physician's opinion as to whether a claimant is disabled or unable to work will be given no "special significance." 20 C.F.R. §§ 404.1527(e)(3), 416.927(e)(3).

If a treating source's opinion is not entitled to controlling weight, the ALJ must consider several factors in determining what weight to give it. These include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with regard to the record as a whole; (5) whether the treating source is a specialist in the area of his or her opinion; and (6) any other factors that tend to support or contradict the opinion. 20

C.F.R. §§ 404.1527(d), 416.927(d). The ALJ must explain his reasons for the weight he gives a treating-source opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also* SSR 96-2p, 1996 SSR LEXIS 9, at *11-12 (July 2, 1996).

Here, the opinion in question consists of brief (often one-word) responses to a sixteen-item questionnaire. [Tr., pp. 470-72] In half of the questions, Dr. Middendorf was simply asked whether he agreed with certain findings by examining psychologist David L. Roebker, Ph.D. (whose report will be discussed below). [*See id.*] The Court notes at the outset — as did the Commissioner — that several of Dr. Middendorf's responses are not "medical opinions," as that term is defined in the regulations, but rather opinions on issues reserved to the Commissioner, such as Koller's RFC and whether she is able to work. [Tr., pp. 470-72; *see* Record No. 12, p. 8] *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ was not required to defer to such opinions, notwithstanding the fact that they were provided by a treating source. *See* 20 C.F.R. §§ 404.1527(e)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ."), 416.927(e)(3) (same).

Furthermore, ALJ McNeil adequately explained the weight he gave to Dr. Middendorf's assessment. On its face, the assessment only addresses Koller's condition from October 27, 2007, to April 17, 2010. [Tr., pp. 470, 472; *see id.*, p. 19 (noting that the assessment "does not address the claimant's condition between the alleged onset date of October 31, 2003 and October 24, 20[0]7")] Office notes from Koller's visits to Dr. Middendorf, cited by the ALJ in his decision, reflect that she experienced only six "episodes" during that two-and-a-half-year period

-9-

and that Dr. Middendorf's treatment consisted primarily of prescribing medication to keep her seizures under control. [Tr., pp. 361-62, 398-99, 439-44; *see id.*, pp. 17-18] Thus, as the ALJ observed, Dr. Middendorf's April 17 assessment is unsupported by his own treatment records. [Tr., p. 19] Moreover, the assessment is inconsistent with other objective medical evidence of record, which includes a normal MRI and EEGs. [*Id.*]

Koller also complains that the ALJ gave insufficient weight to the report of Dr. Roebker, who diagnosed major depression, generalized anxiety disorder, and mild neurocognitive disorder. [Tr., p. 467] The ALJ found Dr. Roebker's report to be inconsistent with, and unsupported by, the medical evidence of record. [Tr., p. 19] For the reasons stated above regarding the opinion of Dr. Middendorf (which, as previously stated, was largely based on Dr. Roebker's report), the ALJ's decision to discount Dr. Roebker's opinion was not erroneous.[3]

### E. Rationale for Restrictions and Evaluation of Subjective Symptoms

In a related argument, Koller asserts that the ALJ violated Social Security Ruling 96-8p in his treatment of Dr. Middendorf's opinion, as well as her own testimony and the testimony of two witnesses regarding her daily activities. [Record No. 9, p. 7] Pursuant to SSR 96-8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5, at *19 (July 2, 1996). The ruling further provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at *20.

---

3  Because Dr. Roebker is an examining source, his opinion is not subject to the treating-source rule.

As discussed in the last section, ALJ McNeil sufficiently explained his reasons for rejecting Dr. Middendorf's opinion. With respect to the testimony of witnesses Anita Smith and Fred Koller concerning how Audrey Koller's impairments affect her daily activities, the fact that the ALJ did not specifically mention their testimony in his decision does not mean that he "failed to consider" it, as Koller maintains. [Record No. 9, p. 8]  The Sixth Circuit has noted that "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky*, 167 F. App'x at 508 (internal quotation marks omitted); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). The Court finds no error in the ALJ's omission, particularly since the statements of these two witnesses were largely duplicative of Koller's own testimony, which ALJ McNeil addressed at length and found to be unsupported by objective medical evidence.

Moreover, while Koller protests that the ALJ failed to address her claims of sleep deprivation and dizziness when scrubbing the bathtub, she neither points to objective medical evidence in the record to support her subjective complaints nor explains how these symptoms would have been relevant to the ALJ's disability determination. [*See* Record No. 9, pp. 7-8] Accordingly, the Court finds no error in the ALJ's failure to mention them.

  **F.**  **Severity of Impairments and Consideration of Impairments in Combination**

Koller argues that the ALJ should have found her left knee, right shoulder, and cognitive mental impairments to be severe. [Record No. 9, pp. 10-11]  She cites Social Security Ruling 96-3p, which defines a severe impairment as one whose "symptoms cause a limitation or

restriction having more than a minimal effect on an individual's ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10, at *5 (July 2, 1996). The regulations likewise provide that a non-severe impairment is one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

To demonstrate the severity of her knee impairment, Koller offers her own subjective complaints and the records of Dr. Middendorf. Those records reflect that Koller complained of left knee pain and swelling on a single occasion during a two-and-a-half-year treatment period. [Tr., p. 399; *see id.*, pp. 361-62, 398-99, 439-44] Given the lack of objective medical evidence in the record to support Koller's claim, the ALJ did not err in concluding that her knee impairment does not significantly interfere with her ability to work and thus is non-severe.

There is even less evidence to support Koller's assertion that her right shoulder impairment should have been deemed severe. In support of this claim, she points only to her own testimony at the administrative hearing that the shoulder "gives [her] a fit every once in a while," that she "had a cortisone shot a couple of times" in that shoulder [Tr., p. 52], and that it would be uncomfortable for her to carry a case of soda from her car to her house. [Tr., p. 53; *see* Record No. 9, p. 11] The ALJ's failure to find a severe impairment on the basis of these comments was not erroneous.

Finally, although the record reflects that Koller has been prescribed medication for anxiety for several years, substantial evidence supports the ALJ's conclusion that her anxiety disorder does not significantly limit her ability to work. For example, Dr. Middendorf noted in 2009 that the condition was controlled with medication [Tr., p. 441]; on other visits, he simply

recorded that Koller was "taking meds" for anxiety. [Tr., pp. 361-62, 398-99, 439-44]  His office notes contain no indication that Koller's anxiety disorder interferes with her ability to function.  Moreover, as noted by ALJ McNeil, Koller has apparently not sought psychological treatment for anxiety. [Tr., p. 18]  In light of this evidence, the ALJ did not err in finding Koller's anxiety disorder to be non-severe.

With respect to Koller's bare assertion that ALJ McNeil failed to consider the combined effect of her severe and non-severe impairments, the Court notes that "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)).  Here, ALJ McNeil made a specific finding that Koller "does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments" in the applicable regulations. [Tr., p. 15 (emphasis added)]  Moreover, his decision contains several references to Koller's "impairments" (plural), as well as specific discussion of each impairment. [*See* Tr., pp. 15-18]  Nothing in the ALJ's decision suggests that he failed to consider Koller's impairments in combination.

### G.     Hypotheticals Posed to Vocational Expert

Finally, Koller argues that the hypotheticals posed to the VE were flawed because they did not incorporate the findings of Mark D. Kroger, M.S., a psychologist who performed a consultative evaluation of Koller on February 7, 2008. [Record No. 9, pp. 13-14]  In support of

this contention, Koller cites numerous supposed findings contained in Kroger's report. For example: "Dr. Kroger noted she has been 'unconscious on 3 occasions associated with seizure activity and/or falling'"; "Dr. Kroger noted she has 'auditory hallucinations' . . . and 'rarely gets any long periods of sleep.'" The problem with these citations is that they refer not to findings made by Kroger, but to his recitation of symptoms reported by Koller herself. With respect to the timing of Koller's seizures, her counsel's misrepresentation of the record is particularly egregious: Kroger did not "note[] [that] Ms. Koller was having seizures 'approximately 1 month apart,'" as asserted in Koller's brief. [Record No. 9, p. 13] Instead, his report reads: "[Koller] states that to the best of her recollection, the closest her seizures have occurred in time are approximately 1 month apart."[4] [Tr., p. 365] Clearly, the ALJ did not err in omitting these "findings" from his hypotheticals.

To the extent Koller's argument does not rest on her counsel's gross manipulation of the evidence, it is nevertheless without merit. She asserts that the ALJ neglected to include the "'moderate' mental restrictions found by Dr. Kroger" in his hypotheticals to the VE. [Record No. 9, p. 14] In particular, she complains that "[m]*oderate* concentration problems . . . must be included in some suitable fashion in the hypothetical question." [*Id.*] However, Kroger concluded that Koller's "ability to sustain attention and concentration appears to be adequate to good." [Tr., p. 371] In any event, ALJ McNeil's second hypothetical to the VE specified that

---

4   The sentences from Kroger's report that contain the other passages quoted above are as follows: "She states she has been unconscious on 3 occasions associated with seizure activity and/or falling." [Tr., p. 366] "She did report the presence of auditory hallucinations, citing the fact that she can often hear her deceased mother 'saying things very clearly.'" [Tr., p. 368] "She states that she rarely gets any long periods of sleep." [*Id.*]

"due to difficulties maintaining attention, concentration and pace, the job must be routine and repetitive, must be far away enough from others to reduce distractions, [and] must not require intense focused attention until the next scheduled break." [Tr., p. 87] Koller has not shown that this hypothetical inadequately reflected her mental limitations.

### IV.

In summary, although Koller has established that she suffers from some medical impairments, she has not established that her symptoms are severe enough to warrant a period of disability, disability insurance benefits, or Supplemental Security Income. The ALJ did not err in his evaluation of the evidence. Viewing the record as a whole, substantial evidence supports ALJ McNeil's determination that Koller is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1)     Plaintiff Audrey Koller's Motion for Summary Judgment [Record No. 9] is **DENIED**.

(2)     Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

(3)     The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 3rd day of November, 2011.



Signed By:
*Danny C. Reeves* DCR
**United States District Judge**